# AFFIDAVIT of DEA TFO BRYAN WELCH

I, BRYAN WELCH, being first duly sworn, do depose and state that:

1. I have been a Task Force Office with the Drug Enforcement Administration (DEA) since January of 2012. Prior to my current position, I was, and still am, a police officer with the Springfield, Missouri Police Department (SPD). I am currently assigned to the DEA-Springfield Resident Office. I have received training from various federal, state, and local law enforcement agencies regarding drug investigations. I have participated in over 100 drug related criminal investigations. I have authored search warrants, participated in Title III investigations as affiant and case agent, purchased narcotics in an undercover capacity, and executed controlled deliveries of narcotics. From my training and field experience, I have extensive knowledge of complex illegal drug distribution and/or manufacturing organizations. I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the "Controlled Substances Act," Title 21, United States Code.

2. Based upon the information provided below, I believe that there is a probable cause basis to find that Kenna HARMON and Anthony J. VAN PELT, have committed criminal acts in violation of Title 21, United States Code, Section 846 and 841, that is conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The following information in support of this probable cause belief is based upon affiant's personal knowledge and investigation in this case, as well as information made known to affiant by other agents and law enforcement officers in southwest Missouri.

3. In early 2014, the DEA, in conjunction with the Missouri State Highway Patrol (MSHP) and Springfield, Missouri Police Department (SPD) initiated an investigation into the Kenna HARMON (HARMON) methamphetamine distribution network. This investigation led officers to apply for a series of Title III wiretaps for four separate cellular telephone numbers used by HARMON. The wiretap on the first telephone, 417-763-5758, (Target Telephone 1), was granted on September 5, 2014, allowing the interception of telephone calls and text messages from that particular cellular telephone used by HARMON. Interceptions on Target Telephone 1 were discontinued on October 1, 2014. On October 9, 2014, a wiretap on two additional telephone numbers, 417-399-4225 (Target Telephone 2) and 417-839-3972 (Target Telephone 3) was granted allowing interceptions of telephone calls and text messages from these particular cellular telephones used by HARMON. Interceptions on Target Telephones 2 and 3 were discontinued on November 6, 2014. On November 13, 2014, a wiretap on telephone number, 417-812-3907 (Target Telephone 4), was granted allowing interceptions of telephone calls and text messages from this particular cellular telephone used by HARMON. During the wiretap intercepts, agents also conducted visual surveillance of HARMON as she engaged in what was believed to be methamphetamine distribution activity.

1

4.  During the interception of telephone calls from HARMON's Target Telephones, HARMON had conversations with individuals which led agents to believe that HARMON was engaged in the distribution of methamphetamine. On October 16, 2014, at 9:29 p.m., a telephone call was intercepted on a Title III order established on HARMON's telephone 417-399-4225, Target Telephone 2, which was outgoing to telephone number 417-365-7884. A person that I recognized as Donette DAVIS answered the telephone. Information that I have received during the course of this investigation indicates that DAVIS is the girlfriend of Kenny FRIEND, who is a part of the HARMON methamphetamine distribution organization.
During this telephone call, DAVIS stated that FRIEND had been trying to get a hold of HARMON. HARMON stated that her phone had been on "silent." HARMON said she had tried to call FRIEND with numerous telephones. HARMON asked DAVIS, "What is everyone saying about those two friends you took the other day?" Based upon previous wiretap intercepts, I believe that HARMON, in referring to "two friends" was referring to a delivery of two pounds of methamphetamine to FRIEND. DAVIS stated that no one was saying anything about them yet, because FRIEND had not "touched them." HARMON asked, "He hasn't touched them yet, he still got her work?" HARMON further stated, "If he ain't touched them tell him not to, tell him to check them and make sure they are up to par." HARMON stated that some were and some were not "up to par" which I believe based upon my review of the previous wiretap intercepts, to refer to the quality of the methamphetamine. HARMON stated that FRIEND was one of her "biggest people right now," so HARMON wanted to make sure he is "not sad." DAVIS stated that she would talk with him about it.

5.  On October 17, 2014, at 6:51 p.m., a telephone call was intercepted on a Title III which had been established on FRIEND's telephone number 417-365-2085 to HARMON's telephone. During the conversation, FRIEND asked HARMON, "How much did I miss your call by?" HARMON stated, "Oh, a couple minutes, okay, I called, I tried calling Donette too and she, I don't think she knows the number yet, so I was like it's okay." FRIEND stated, "She's out, she's asleep." HARMON stated, "Oh, I need to go and do that, grab that thing real quick and I needed someplace to go with it." FRIEND stated, "Okay come on." HARMON replied, "And find, so can I come to you." FRIEND stated, "Come on, let me know." HARMON said, "Okay, well, clean out your house, keep everybody out of there and I'm going to go by there now and do that." At 7:37 p.m. on October 17, 2014, FRIEND sent a text to HARMON's Telephone that stated, "Call before u come." An outgoing telephone call was later intercepted on the Title III on FRIEND's telephone to HARMON's telephone, Target Telephone 2. During this conversation, HARMON stated. "Hey I'm almost there." FRIEND said, "Hey, ugh, hold on, alright (inaudible) go around the block one time." HARMON stated, "Past National." FRIEND stated, "Turning on National?" HARMON replied, "(Inaudible) you know what I got on me, tell them to go." FRIEND stated, "Alright, alright, I'll tell them to go, alright."

6.  On October 17, 2014, while the above wire and electronic communications were being intercepted between FRIEND's telephone and HARMON's telephone, agents were

2

conducting surveillance on HARMON. Agent observed HARMON travel to the Eastway Storage Center at 3156 E. Division, Unit #B16, Springfield, Missouri. Based on my involvement in this investigation, as well as review of calls intercepted from HARMON's telephones, I believe that HARMON utilizes Unit #B16 to store methamphetamine that she distributes. HARMON left the storage unit and traveled to the 500 block of East Sunshine. After a vehicle is seen leaving FRIEND's residence located at 504 E. Sunshine, Springfield, Missouri, HARMON drove around the block once and then parked in the driveway of FRIEND's residence.

7. On November 14, 2014, a telephone call was intercepted on a Title III Intercept established on HARMON's telephone, 417-812-3907, Target Telephone 4, outgoing to telephone number 773-490-9540, being used by Anthony VAN PELT. HARMON and VAN PELT discussed VAN PELT coming back to Springfield, Missouri with what I believed to be methamphetamine. HARMON discussed getting money together to pay VAN PELT when he arrived in town. HARMON also discussed prices owed to VAN PELT. During the conversation, VAN PELT stated, "There is more to get." HARMON responded, "If you got extra whatever let me get that, I got you." VAN PELT stated, "It's Cali Cali it's different it's like big giant." HARMON stated, "Hopefully cheaper right?" At approximately 11:26 p.m., on November 14, 2014, HARMON called VAN PELT's telephone, over Target Telephone 4, and stated she was on the way from her residence. VAN PELT stated to knock on the garage door when she arrived. HARMON stated she would be at his house in a minute. Surveillance was established at 1947 S. Missouri, Springfield, Missouri, which is the suspected residence of VAN PELT. Shortly afterwards, HARMON was observed by agents arrive at 1947 S. Missouri, Springfield, Missouri. Agents observed her enter the residence and observed that she stayed for approximately 20 minutes before leaving.

8. On November 15, 2014, HARMON was observed by agents conducting surveillance returning to 1947 S. Missouri, at approximately 1:06 a.m. and again at approximately 1:43 a.m. Prior to HARMON returning to 1947 S. Missouri, she contacted VAN PELT over Target Telephone 4. HARMON informed VAN PELT that the amount of methamphetamine she had earlier received from VAN PELT was "light." VAN PELT advised her to come back to the residence because he thought he had an issue with his scales. During HARMON's visits back to the Missouri residence, VAN PELT left for a short period of time. During this time, HARMON contacted VAN PELT over Target Telephone 4 and asked where he was. HARMON asked VAN PELT's location because she said she was driving "a guy crazy" at the house. VAN PELT responded that, "Brandon can handle it." "Brandon" is believed to be Brandon MALEN. The utilities at 1947 Missouri are registered in MALEN's name.

9. On November 27, 2014, officers intercepted telephone calls over a T-III intercept established on FRIEND's telephone, which led the officers to believe FRIEND was intending to purchase a large amount of methamphetamine from HARMON. As result of these telephone conversations, agents decided to traffic stop both HARMON and FRIEND as they left their respective residences to meet to engage in the methamphetamine distribution activity. Kenna HARMON was traffic stopped in her blue BMW 545i while traveling east

3

bound at the 3000 block of West Sunshine, in Springfield. HARMON had just left her residence at 648 Dana, Republic, Missouri. During the search of HARMON's vehicle, officers discovered a small amount of methamphetamine, $5,000 in United States currency, and marijuana, all of which was found on either HARMON's person, or within the vehicle.

10. When HARMON left her Republic residence, agents conducting surveillance observed a black Ford Mustang was parked in the driveway. The Mustang was followed to 1906 S. Grant, Springfield, Missouri, where SPD initiated a traffic stop on the vehicle. The vehicle pulled into a parking lot and the driver of the vehicle, later identified as Anthony VAN PELT, fled from the vehicle. Nikki PILE was the front passenger of the vehicle who stayed with the vehicle. PILE identified VAN PELT as the driver of the vehicle. A search of the vehicle yielded approximately $20,000 in United States currency.

11. Due to the investigation, agents believed VAN PELT could have run to 1947 S. Missouri, Springfield, Missouri, for which agents had already obtained a federal search warrant. SPD established a perimeter around the residence until a SPD entry team could respond to the residence. The SPD team made entry on the residence where they found VAN PELT in the master bedroom of the residence, hiding under a bed. VAN PELT was arrested on an outstanding arrest warrant out of Camden County Missouri for Failure to Appear in Court on an original charge of Possession of a Controlled Substance. Inside the residence, agents found firearms in the master bedroom where VAN PELT was hiding. Approximately 1 pound of methamphetamine, marijuana, and $3,000 in United States currency was found in a hidden safe by the master bedroom. Agents, in the garage of the residence, found a duffel bag that contained approximately 20 pounds of marijuana and 2 additional pounds of methamphetamine.

12. After his arrest, VAN PELT provided a statement to law enforcement admitting that he obtained methamphetamine from a source of supply in Kansas City, Missouri, and then redistributed some of that methamphetamine to HARMON.

13. On November 27, 2014, a federal search warrant was executed at 648 Dana, Republic, Missouri. Agents found at the residence approximately $20,000 in United States currency, approximately 5 ½ pounds of methamphetamine, and a loaded handgun found in a nightstand in HARMON's bedroom.

14. Also on November 27, 2014, surveillance was conducted at FRIEND's residence, 504 E. Sunshine, Springfield, Missouri. Agents observed FRIEND and DAVIS leave the residence together in a vehicle. A vehicle enforcement stop was conducted on the vehicle. A search of the vehicle resulted in the seizure of approximately $35,000 of U. S. currency located in DAVIS's purse.

15. Agents then conducted a search of FRIEND's residence, pursuant to a federal search warrant. The search resulted in the seizure of a small amount of methamphetamine, two safes, a money counter, and a digital scale.

4

16. After his arrest, FRIEND was advised of his rights under *Miranda* and agreed to be questioned by law enforcement. FRIEND admitted that he obtained methamphetamine from HARMON for distribution and that the $35,000 discovered inside DAVIS's purse was money that FRIEND intended to provide HARMON in exchange for methamphetamine.

17. Based upon my training and experience, the amount of methamphetamine seized in this investigation represents a distribution amount.

BRYAN WELCH
Springfield, Missouri, Police Department
Task Force Officer, DEA

Subscribed and sworn to before me in my presence on this 28th day of November, 2014.

DAVID P. RUSH
United States Magistrate Judge